289 P.2d 196

**Gordon RAY, doing business under the name Ray Transportation Company, Plaintiff and Respondent,**

**v.**

**CONSOLIDATED FREIGHTWAYS, a corporation, Defendant and Appellant.**

No. 8352.

Supreme Court of Utah.

Nov. 2, 1955.

138

Gustin, Richards & Mattsson, Salt Lake City, for appellant.

E. L. Schoenhals, Salt Lake City, for respondent.

CROCKETT, Justice.

Two modern road behemoths, plaintiff's oil tanker truck and defendant's large tractor trailer, unfortunately needed the use of the same space at the same time on a highway narrowed by heavily drifted snow. To avoid a collision, plaintiff's tanker "took for timber" off the road and ran into a utility tower. That circumstance provided the foundation for this and another law suit hereinafter referred to.

The incident happened on February 14, about 6 a. m. while it was still dark. Ray's oil tanker, containing a full load of gasoline, was traveling westward on U. S. Highway 91 just west of Brigham City, Utah, and Consolidated's truck was traveling east. They approached an expanse of high snow drifts, approximately 500 to 600 feet in length, through which a narrow channel (about 14 feet wide) had been ploughed to clear the highway. Each unit being the full eight feet wide, the maximum per-

mitted by law, there was not enough room for them to pass. As Consolidated's truck approached the constricted area the driver flashed his road light which Ray's driver said he understood as giving him the "all clear—proceed" signal and the right of way to enter the narrowed area. He acknowledged this "signal" by flashing his own road light and proceeded. After he had done so, Consolidated entered from the other end and continued toward him. It being apparent to Ray that the trucks could not pass, he moved to the right, his wheels cutting into the snowbank. Consolidated continued to approach, giving no ground but bearing onto Ray's side of the highway. In order to avoid a collision, Ray pulled more to the right, which dropped his wheels onto the sloping shoulder of the road, pulling it off the road and into the concrete abutment of a Utah Power & Light Company tower. The impact caused a high tension wire to fall, igniting the tank load of gasoline which provided fuel for a fire which destroyed the tanker, and also a nearby telephone pole and appurtenant equipment belonging to the Mountain States Tel. & Tel. Company.

The Telephone Company sued both Consolidated and Ray. Each denied his own negligence and blamed the other. The trial court found both negligent, but fixed liability against Ray only, based on a find-ing that his negligence was the sole proximate cause of the damage, and that the negligence of Consolidated was a remote and not a proximate cause. That judgment was affirmed.[1]

In the instant case, Ray sues Consolidated for the damage to his equipment. Consolidated sets up three defenses: (A) res judicata; (B) that neither its negligence nor proximate cause was proved; and (C) Ray's contributory negligence.

A. In relying on the doctrine of res judicata, Consolidated takes the position that it and Ray, although co-defendants in the Telephone case, were in fact adverse parties in that action. It contends that Ray should have cross-complained in that case; that his failure to do so bars recovery in this action; and that the adjudication there made, that Ray's negligence was the sole and proximate cause of the damage, renders that question res judicata and bars his recovery in this later suit.

Defendant relies on the case of Vaughn's Adm'r v. Louisville & N. R. Co.[2] In that case, the parents of a deceased son, who was driving a truck for them, were joined as defendants with the RR in an action to recover for the death of two boys who were riding with the son when the truck was struck by a freight train in a crossing collision. It was there adjudged that the son was guilty of negligence and that it

1.  Mountain States Tel. & Tel. Co. v. Consolidated Freightways, Utah, 242 P.2d 563.

2.  297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060.

proximately contributed to the collision. Thereafter the parents brought an action against the RR for the death of the son. The court held that the question of the son's negligence had been previously adjudicated and his parents were therefore estopped from relitigating the question. Whatever value as precedent that case may have had, the Kentucky Supreme Court in the later case of Clark's Adm'x v. Rucker, Ky., 258 S.W.2d 9 limited the Vaughn case to its particular facts and followed what we consider to be the generally accepted and better view of the law as indicated in the subsequent discussion herein.

In what appeals to us as a sound decision dealing with the problem at hand, Pearlman v. Truppo, 159 A. 623, 625, 10 N.J.Misc. 477, the Supreme Court of New Jersey held that a judgment against one of the codefendants was not res adjudicata in a subsequent action brought by the co-defendant who was found liable in the prior action. Speaking through Mr. Justice Ackerson, the court assigned the following reasons:

"It seems to me that an important element which negatives the application of the doctrine of res adjudicata in the case sub judice is the fact that, under the pleadings in the former action, neither defendant was in a position to control the proceedings so as to establish any rights as against the other. They were both made parties at the will of the plaintiff who might

have dismissed the suit as to one and the other could not have complained. * * * It is apparent, therefore, that the remaining parties in the present action were not adverse parties in the former action in which they appeared as codefendants, and that the judgment therein is not res adjudicata in the instant case. This is even more apparent when we consider that one of the essential elements to constitute res adjudicata is a right of appeal from the judgment."

In reference to the principle applicable here, the Supreme Court of the United States, speaking through Mr. Justice Field said:

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is

the judgment conclusive in another action." [3]

■ The general rule is accurately set forth in the Restatement of the Law of Judgments, at p. 384 et seq.:

"The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves."

This text continues:

" * * * where a person is injured by the concurrent negligence of two tortfeasors who joined in the action, the fact that each of them attempts to show that the other was solely responsible for the accident or that the other alone was negligent does not make the issue of negligence res adjudicata in subsequent proceedings between them, where the liability of one to the other does not depend upon his liability to the injured person." [4]

■ Here neither defendant had filed a cross-complaint against the other in the prior case, and although each denied its own negligence and tried to place responsibility upon the other, the real issue in that case was whether either or both were liable to the Telephone Company. The direct issue whether Consolidated was liable to the plaintiff, Ray, was not litigated.

We are in no way concerned with a situation where one defendant cross-complains against the other, nor with what might have been the situation if this had been done. Our consideration of this matter is confined to the case as it was actually presented in the prior action. Under such circumstances there are a number of factors which combine to suggest the impropriety of permitting a plea of res judicata to bar a subsequent suit by one defendant against the other. They may be summarized thus: (1) The real issue in this second suit, whether one of these parties was liable to the other, has not been raised nor litigated. (2) The issues as to the negligence plaintiff charges in the prior action against the co-defendants and as framed by their defenses may or may not be the same as the issues inter se. (3) In the prior case the plaintiff initiates and controls the proceeding, and neither defendant can control it; the plaintiff, for his own purposes, may emphasize evidence against one defendant and minimize or omit it against the other. (4) Plaintiff can even go so far as to dismiss against one and proceed against the other. (5) Either or both de-

---

3. Cromwell v. Sac County, 1877, 94 U.S. 351, 24 L.Ed. 195; see also State v. Erwin, 101 Utah 365, at page 422, 120 P.2d 285, at page 315; State v. California Packing Corp., 105 Utah 191, 145 P.2d 784; East Mill Creek Water Co. v. Salt Lake City, 108 Utah 315, 159 P.2d 863.

4. See also 50 C.J.S., Judgments, § 819, p. 372; Hardy v. Rosenthal, 2 Cal.App.2d 442, 38 P.2d 412; Freeman on Judgments, 5th ed. par. 422, p. 918.

fendants, in a joint effort to escape liability, may put on evidence actually favorable to the other and assist in the defense of the one he later seeks to hold liable. (6) The defendants can appeal only against the plaintiff, but cannot appeal against each other.

We conclude that the plaintiff Ray is within the rule supported by the great weight of authority that a judgment in favor of a plaintiff in an action against two or more defendants is not res judicata or conclusive of the rights and liabilities of the defendants inter se in a subsequent action between them unless those rights and liabilities are expressly put in issue in the first action, by cross-complaint or other adversary pleadings, and are determined by the judgment in the first action.[5] The parties here were not adverse to each other in the case brought against them by the Telephone Company in the sense necessary to make the determination of the issues herein res judicata.

■ (B) The trial court based its finding of negligence against the defendant on the fact that after it had given the signal herein discussed, and the Ray truck, in reliance thereon, had proceeded well into the constricted area, the defendant's driver entered without keeping a proper lookout that he could safely proceed, and also went on to his left or wrong side of the highway. While the defendant's brief asserts that nei-

ther such findings nor the conclusion that its negligence proximately caused the collision is supported by the evidence, no serious effort is made to sustain this point on appeal. It is sufficient to say, without elaborating on the matter, that the record refutes that contention.

■ (C) In seeking reversal of the judgment emphasis is placed on attacking the finding that plaintiff was not guilty of contributory negligence. In addressing our attention thereto, it is meet to digress and consider the quantum of evidence with which we are concerned. The question as it is often stated: "Could the court reasonably find the plaintiff not guilty of contributory negligence?" is somewhat misleading. It implies the necessity of making an affirmative finding, based on evidence, and suggests application of the familiar rule that the finding must rest on some substantial competent evidence. But that is not true as to this negative finding: that is, the finding that the plaintiff was not guilty of contributory negligence represents only a refusal to make an affirmative finding on the issue. This merely indicates that the fact trier was not convinced by a preponderance of the evidence that plaintiff was negligent, or if he was, that he was not thus convinced that it contributed to proximately cause the injury.

■ At the outset the mind of the fact trier is presumably in equipoise on the question of whether the plaintiff was contribu-

5. See annotation in 101 A.L.R. 104, 105; also 142 A.L.R. 727, 728; 152 A.L.R. 1066, 1077.

torily negligent. The burden is upon the defendant to overcome this balance and to impel his mind toward a conclusion. If no evidence is presented, the burden is not met, and the finding is that the plaintiff was not guilty of contributory negligence; likewise, if the evidence is insufficient to convince by a preponderance of the evidence, the finding is that the plaintiff was not guilty of contributory negligence. Such finding, therefore, may be based either on an entire lack of evidence, or upon insufficient evidence. Obviously, it is not necessary that such finding be supported by "substantial evidence." Therefore, if there is any reasonable basis, either because of the lack of evidence, or from the evidence and the fair inferences to be derived therefrom, taken in the light most favorable to the plaintiff, upon which any reasonable mind could conclude that it was not convinced by a preponderance of the evidence either (a) that the plaintiff was guilty of contributory negligence or (b) that such negligence proximately contributed to cause the injury, then the refusal of the trial court to find plaintiff contributorily negligent must be sustained.[6] It would only be when such refusal did such violence to common sense as to convince the court that no fact trier, acting fairly and reasonably, would refuse to make such finding, that it would be reversed.

We do not presume to know nor to pass upon what light signals flashed between trucks upon the highway mean. However, upon the basis of the evidence in this case, the trial court would have been justified in believing that as the Ray truck approached this constricted area, the two flashes of the road light on defendant's truck indicated, as plaintiff's driver testified: "that the first man that flashes lets the other man go ahead and you answer back that you are going to acknowledge it and go"; that defendant flashed such signal; that Ray's truck driver acknowledged it, and in reliance on the exchange of signals, proceeded "well into the constricted area" before defendant's truck entered.

Defendant protests that plaintiff, was nevertheless, negligent because his driver testified that he "could not have stopped within 400 feet," which, defendant argues, shows as a matter of law that he was traveling too fast under existing conditions. There are two propositions which support the judgment of the trial court against this argument. The first devolves upon the credibility of such testimony. Ordinarily the court will hold a party responsible for the unfavorable aspects of the testimony he presents. Under the facts here, with respect to this particular bit of testimony, he was not necessarily obliged to do so. It may have seemed to the trial judge quite unlikely that at the driver's estimated speed of 25 miles per hour it would have taken this heavy unit such a long distance to stop, and that the driver might have been in error in giving this obviously off-

6. Lawrence v. Bamberger R. Co., 3 Utah 2d 247, 282 P.2d 335, 337.

hand estimate of the distance in which he could have stopped. If the testimony seemed so wholly unreasonable to the judge in the light of his own knowledge and experience that he deemed it incredible, it was not imperative that he abandon common sense and believe it and hold it against the plaintiff simply because it was testified to by his driver. Except for the statement as to stopping distance, the speed testified to, about 25 miles per hour, was not excessive if defendant had accorded plaintiff the right of way as the driver thought it was going to do.

The other point is that the court could have reasonably believed that the distance in which the plaintiff could have braked to a stop would have had no bearing on the accident because reasonable care would not have required plaintiff to resort to braking in any event. Other evidence was to the effect that upon applying brakes to plaintiff's equipment, there would have been danger of throwing it out of control on the icy road, or that the tractor and trailer may have "jack-knifed" across the highway, either of which would have produced a hazard of violent collision with the defendant's heavy unit. As opposed to these risks the driver had the choice of "cutting snow" in the snowbank on the right side of the highway, which he did, resulting in the collision and the destruction of the vehicle hereinabove described. It seems without question that reasonable minds could find that within the limits of due care, he could have rejected the idea of braking,

no matter what the estimated stopping distance might have been, and that the choice he made was within the standard of care of an ordinary and prudent man under the circumstances. This being so, the fact that the plaintiff was traveling at his stated speed, 25 miles per hour, and that it would have taken him much beyond the usual braking distance to have stopped, would have had no causal connection with the accident.

Affirmed. Costs to respondent.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD and WORTHEN, JJ., concur in the result.