**CENTURIAN CORPORATION,
Plaintiff and Respondent,**

v.

**FIBERCHEM, INC., Defendant
and Appellant.**

No. 14583.

Supreme Court of Utah.

April 8, 1977.

Michael F. Heyrend, of Carr, Heyrend & Jones, Salt Lake City, for defendant and appellant.

James R. Brown, of Jardine, Johnson & Baldwin, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff, Centurian Corporation, sued defendant, Fiberchem, Inc., for return of $3,300 advanced by plaintiff under a contract to purchase from defendant materials to be used in the manufacture of boats. Defendant denied any contract was entered into, and applied the money to the account of Centurian Boats, Inc., a corporation which defendant claims to be the alter ego of plaintiff, since it had the same original incorporators and shareholders as plaintiff has. Defendant also asserted a counterclaim for an alleged balance on account of $430 and punitive damages of $5,000. Upon a trial to the court, it found in favor of plaintiff for return of its $3,300.

Defendant appeals, contending the trial court erred in rejecting its defense of alter ego and in making certain erroneous findings of fact.

Centurian Custom Boats, Inc., (whose name was later changed to Centurian Boats, Inc.) was incorporated in Utah on October 14, 1968, by Richard Nickles and two others for the purpose of manufacturing and selling boats. Centurian Boats, Inc. maintained an open account with defendant through which it purchased various goods and materials. On January 22, 1972, a fire

occurred at Centurian Boats, Inc., and its physical plant was destroyed, causing it to cease operations and to dissolve the corporation. At that time Centurian Boats, Inc. owed a balance of $3,313.15 on its account with defendant. After fruitless attempts to collect the debt, defendant wrote the account off as a bad debt on July 13, 1973.

Mr. Richard Nickles and others had previously, in August of 1969, organized another company, plaintiff Centurian Corporation, to deal in real estate and for other purposes. A year and a half after the above mentioned fire, in the latter part of 1973, plaintiff also got into the business of producing and selling boats. It ordered some materials from the defendant which were to be shipped from the latter's business in Seattle; and made an advance payment by a check for $3,300. Defendant's branch manager acknowledged receipt of the check and forwarded it to the defendant's head office in Seattle. Instead of crediting that amount to plaintiff Centurian Corporation on account of the materials it had ordered, that office purported to apply the $3,300 to the debt previously owed by the other corporation, Centurian Boats, Inc. Plaintiff made known its objections, made repeated demands for delivery of the materials, or the return of the money, which demands were refused and this suit resulted.

In justification of its refusal to comply with the plaintiff's demands, defendant argues that Mr. Richard Nickles was the central figure in the creation and management of all three of the Centurian Corporations mentioned above, that they were in effect the alter ego of each other; that in dealing with him defendant placed reliance upon him and his corporations, wherefore the money paid by plaintiff Centurian Corporation could properly be applied to the debt previously owed by Centurian Boats, Inc.

■ There is no doubt about the correctness of the proposition urged by the defendant that a party should not be permitted to use corporations of similar names to engage in a now you see it, now you don't legerdemain and thus trick or cheat another.[1] But the position essayed by the defendant disregards the proposition that an essential to its asserted defense of alter ego is that the corporations were so used as to confuse or deceive, that there is basic unfairness, something akin to fraud or deception which thus placed defendant at a disadvantage and worked an injustice.[2]

The obstacle to the defendant's position is that the trial court refused to find the facts to fit that defense. In support of that refusal plaintiff points to the facts that the evidence shows that Mr. Schwab, defendant's branch manager, knew of the fire that had destroyed the Centurian Boats, Inc. facility. He visited the plant and saw that it was not capable of operation. He also knew that defendant had not received an order from either Centurian Boats, Inc. or Centurian Corporation for a year and a half. There was also evidence of several phone conversations between Mr. Schwab and Mr. Nickles concerning the purchase and the expected delivery of the materials which plaintiff had ordered from the defendant.

■ Inasmuch as under the issues as hereinabove recited, the burden of proving its defense was upon the defendant, we would not reverse and compel a finding in accordance with that contention unless the evidence were such that all reasonable minds would necessarily so find.[3] Conversely, if there is a reasonable basis in the evidence, or from lack of evidence, upon which reasonable minds could remain unconvinced, we would not disturb the ruling of the trial court.

1. *Chatterly v. Omnico Inc.*, 26 Utah.2d 88, 485 P.2d 667.

2. *Chatterly v. Omnico Inc.*, footnote 1 above; *Dockstader v. Walker*, 29 Utah 2d 370, 510 P.2d 526; Fletcher Cyc. Corp., Perm.Ed. Vol. 1, Sec. 41.1; *Frigidaire Sales Corp. v. Union Properties, Inc.*, 14 Wash.App. 634, 544 P.2d 781; *North Arlington Med. Bldg., Inc. v. Sanches Cons't. Co.*, 86 Nev. 515, 471 P.2d 240.

3. *In re Swan's Estate*, 4 Utah 2d 277, 293 P.2d 682; *Ray v. Consolidated Freightways*, 4 Utah 2d 137, 289 P.2d 196.

On the basis of what has been said herein, the judgment is affirmed. Costs to plaintiff (respondent).

ELLETT, C. J., and MAUGHAN, WILKINS, and HALL, JJ., concur.