2005 UT App 87

**LAKESIDE LUMBER PRODUCTS, INC., an Arizona corporation, Plaintiff and Appellant,**

v.

**Renee EVANS, Dan R. Evans, et al., Defendants and Appellee.**

No. 20010334–CA.

Court of Appeals of Utah.

Feb. 25, 2005.

Clinton J. Bullock, J. Jay Bullock, and Karen Bullock Kreeck, Bullock Law Firm, Salt Lake City, for Appellant.

Loren D. Martin, Loren D. Maratain PC, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 Lakeside Lumber Products, Inc. (Lakeside) appeals the district court's grant of summary judgment in favor of Dan R. and Renee Evans. We affirm.

## BACKGROUND

¶ 2 In 1996, Dan Evans, in his capacity as manager of a limited liability company, E.S. Systems, executed a personal guarantee agreement in favor of Lakeside. Lakeside delivered goods to E.S. Systems, but E.S. Systems and Dan Evans failed to pay for the goods. In 1998, E.S. Systems filed for bankruptcy. Later that same year, Lakeside obtained a judgment against Dan Evans in Arizona. Dan Evans filed a petition for bankruptcy in 1999.

¶ 3 Lakeside brought the present action against Dan and Renee Evans in 1998, seeking to satisfy the Arizona judgment by obtaining an interest in the couple's primary residence. Dan and Renee Evans had transferred the home to an intervivos trust several years earlier. In 1989, Dan and Renee Evans executed the DaRe Family Trust Agreement, which created three separate trusts: the DaRe Trust, the Daymond Trust, and the Revans Trust. The Evanses conveyed the home to the Revans Trust. Article II of the DaRe Family Trust Agreement, which outlines the terms of the Revans Trust, states that: "Property held as 'The Revans Trust' is the exclusive property of Renee Poulsen Evans and Daniel Raymond Evans hereby expressly waives all interests ... therein." Dan and Renee Evans were joint trustees under the DaRe Family Trust Agreement.

¶ 4 The DaRe Family Trust Agreement was amended in 1997. As part of the amendment process, Dan and Renee Evans executed a separate trust agreement for the Revans Trust, naming Renee Evans as the sole trustee. In addition, the couple filed a quitclaim deed as trustees, purporting to reconvey the home to the Revans Trust. The stated purpose of the quitclaim deed was "to reflect that Daniel R. Evans ... no longer serves as a trustee."

¶ 5 Lakeside's complaint alleged that either the initial transfer to the trust or the subsequent amendment constituted a fraudulent transfer. Alternatively, Lakeside asked the district court to create a constructive trust in Lakeside's favor because, in Lakeside's view, Dan Evans continues to hold an interest in the home as a beneficiary and still has power to revoke the transfer under the Revans Trust.

¶ 6 After suit was filed, Dan and Renee Evans moved for summary judgment and Lakeside filed a cross-motion for summary judgment. In granting summary judgment in favor of Dan and Renee Evans, the district court concluded that the undisputed facts did not demonstrate that Dan Evans transferred the home to the trust with the intent to defraud his creditors. Further, the district court determined that the 1997 amendment to the trust agreement was not a transfer, but merely an addition to the trust agreement. With regard to the constructive trust

claim, the district court held that the trust agreement did not give Dan Evans the power to revoke the transfer of the home.' The district court stated that Dan Evans was a beneficiary of the Revans Trust, but refused to create a constructive trust in Lakeside's favor. Lakeside appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Lakeside argues that the district court erred in rejecting its claims for fraudulent transfer and constructive trust, and in granting the Evanses' motion for summary judgment.

■ ¶ 8 "[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). Summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Moreover, a district court's interpretation of a "trust instrument is a question of law," which we review for correctness. *Jeffs v. Stubbs*, 970 P.2d 1234, 1251 (Utah 1998).

## ANALYSIS

### I. Fraudulent Transfer

#### A. The 1989 Conveyance

■ ¶ 9 Lakeside argues that the district court erred in concluding that the 1989 conveyance of the home to the trust was not fraudulent as a matter of law. Under the Uniform Fraudulent Transfer Act (the Act), the transfer of an asset "is fraudulent ... if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor." Utah Code Ann. § 25–6–5(1) (1998). The existence of "fraudulent intent is ordinarily considered a question of fact, and may be inferred from the existence of certain indicia of fraud" enumerated in the Act. *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct.App.1989) (citations and quotations omitted). Indicia of fraud "are facts having a tendency to show the existence of fraud, although their value as evidence is

relative not absolute." *Id.* (citations and quotations omitted). Under the Act, indicia of fraudulent intent include: "transfer ... to an insider," and "the debtor retain[ing] possession or control of the property." Utah Code Ann. § 25–6–5(2)(a), (b). Moreover, the Act provides that the enumerated indicia of fraud are to be considered "among other factors" in determining actual intent. *Id.* § 25–6–5(2).

■ ¶ 10 With regard to the 1989 conveyance, Lakeside argues that two indicia of fraud are present: (1) Dan Evans transferred the home to an "insider"; and (2) Dan Evans has continued to reside in the home, effectively retaining control of the property. Assuming, without deciding, that Lakeside's contentions are true, we conclude that these indicia of fraud, considered in conjunction with "other factors," fail to create a triable issue of fact in this case. Crucial to our determination is the temporal remoteness of the 1989 conveyance to both the 1996 guarantee agreement and Dan Evans's 1999 petition for bankruptcy. Lakeside has pointed to no facts suggesting that in 1989, or shortly thereafter, Dan Evans was insolvent or experiencing other financial difficulties. Likewise, there are no facts in the record that would suggest that the 1989 transfer was part of a larger scheme to defraud future creditors such as Lakeside. Based merely on the indicia of fraud cited by Lakeside— transfer to an insider and retaining control of the transferred property—a jury could not rationally conclude that Dan Evans transferred the property with an intent to defraud creditors. Thus, the district court did not err in granting summary judgment on this issue.

#### B. The 1997 Trust Amendment

¶ 11 Lakeside contests the district court's conclusion that the 1997 amendment to the trust was not a transfer, but simply a modification of the trust agreement. Under the Act, a transfer is defined as "every mode ... of disposing of or parting with an asset or an interest in an asset." Utah Code Ann. § 25–6–2(12) (1998).

■ ¶ 12 At the time of their creation, the DaRe Trust, the Daymond Trust, and the

Revans Trust were governed by a single trust agreement, entitled "the DaRe Family Trust." Under the 1989 trust agreement, Dan and Renee Evans were both trustees of the Revans Trust. In 1997, the trust agreement was amended and a separate agreement for the Revans Trust was created. At that time, Dan and Renee Evans, as trustees, executed a quitclaim deed to the Revans Trust and named Renee Evans as the sole trustee.

¶ 13 We conclude that these actions did not effectuate a transfer within the meaning of section 25–6–2(12). Dan Evans did not part with an asset or an interest in an asset by signing the quitclaim deed as a trustee. The purpose of the amendment and the quitclaim deed was to reflect Dan Evans's resignation as trustee. The district court did not err in determining that the 1997 amendment was not a transfer. Thus, the district court properly granted summary judgment in favor of Dan and Renee Evans on Lakeside's fraudulent transfer claim.

## II.  Constructive Trust

■ ¶ 14 Lakeside argues that the undisputed material facts justified the creation of a constructive trust in Lakeside's favor. "A constructive trust is an equitable remedy which arises by operation of law to prevent unjust enrichment." *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). "[T]he plaintiff in bringing a suit to enforce a constructive trust seeks to recover specific property." Restatement of Restitution § 160 cmt. a (1937). Because Lakeside is seeking to recover specific property, Lakeside must show a nexus between the alleged wrongful conduct and the property that is the target of the constructive trust action. *See Baltimore & Ohio R.R. Co. v. Equitable Bank*, 77 Md.App. 320, 550 A.2d 407, 412 (1988) ("In order to impose a constructive trust as a matter of law specific funds must be ascertained as traceable to fraudulent or wrongful conduct."); Restatement of Restitution § 160 cmt. b ("A constructive trust is imposed because the person holding title would profit by a wrong or would be unjustly enriched if he were allowed to keep the property."); 76 Am.Jur.2d *Trusts* § 207 (1992) (noting that imposition of

a constructive trust requires that "specific identifiable property" be held by the defendant).

¶ 15 Lakeside contends that a constructive trust is an appropriate remedy because Dan Evans is either a beneficiary of the Revans Trust or has power to revoke the transfer of the home. However, even assuming these facts, a constructive trust can only be imposed if Lakeside can demonstrate a connection between wrongful conduct and the property. *See Baltimore & Ohio R.R. Co.*, 550 A.2d at 412.

■ ¶ 16 Lakeside argues that it can prevail on its constructive trust claim without a showing of wrongful conduct. Lakeside points to section 156 of the Restatement of Trusts, which provides that "[w]here a person creates for his own benefit a trust[,] . . . creditors can reach his interest." Restatement (Second) of Trusts § 156 (1959). The Restatement further provides that the creditor can reach the assets of a self-settled trust without showing fraudulent intent. *See id.* cmt. a. However, section 156 cannot be read to allow a creditor to reach assets of a self-settled trust under any theory of recovery, even where, as here, the theory urged by the creditor requires a showing of fraudulent or wrongful conduct. Section 156 merely states a general rule: A debtor's interest in a self-settled trust is reachable to the same extent as the debtor's non trust assets. Moreover, comment (a) of section 156 simply recognizes it is possible for a creditor to successfully reach self-settled trust assets without showing fraudulent intent, if the creditor pleads a proper theory of recovery. *See Leach v. Anderson*, 535 P.2d 1241, 1243 (Utah 1975) (citing the general rule that self-settled trusts are void against creditors and allowing a creditor to reach the assets of a self-settled trust under a statute that did not require a showing of fraudulent intent). Comment (a) does not suggest that a creditor's obligation to prove all required elements of an established cause of action is altered when the creditor seeks to reach the assets of a self-settled trust. Thus, Lakeside cannot avoid its obligation to prove each element of its constructive trust claim simply by citing the Restatement of Trusts. If Lakeside desired

**158**

to recover without having to prove fraudulent or wrongful conduct, it was incumbent upon Lakeside to plead such a theory.

¶ 17 Lakeside also cites *Butler v. Wilkinson*, 740 P.2d 1244 (Utah 1987), for the proposition that a judgment creditor can reach a debtor's property via a constructive trust action. However, *Butler* is easily distinguished from the present case. In *Butler*, the Utah Supreme Court held that a constructive trust was necessary to permit judgment creditors to reach the proceeds resulting from a debtor's fraudulent transfer where the judgment creditors had no other remedy. *See id.* at 1262.

¶ 18 In contrast to *Butler*, the present case does not involve a fraudulent transfer or other wrongful conduct. The debtor's fraudulent transfer in *Butler* gave rise to the constructive trust; without the fraudulent transfer, a constructive trust would have been inappropriate. *See id.* Here, even if Dan Evans holds an interest in the Revans Trust, as Lakeside asserts, this fact alone does not give rise to a constructive trust in Lakeside's favor absent a showing of fraud or other wrongdoing. While it is true that Dan Evans has failed to pay his debt to Lakeside, it does not follow that Lakeside can collect on the debt by imposing a constructive trust on the home. Thus, we affirm the district court's conclusion that, as a matter of law, Lakeside cannot prevail on its constructive trust claim.

### CONCLUSION

¶ 19 Accordingly, we affirm the district court's order granting summary judgment in favor of Dan and Renee Evans and denying Lakeside's cross-motion for summary judgment.

¶ 20 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and WILLIAM A. THORNE JR., Judge.