2017 UT App 23

# THE UTAH COURT OF APPEALS

LESLIE D. MOWER, LD III LLC,
AND LD RANCH LLC,
Appellants,
*v.*
DAVID R. SIMPSON, LANDMARK REAL ESTATE INC., WOOD SPRINGS
LLC, PHEASANT MEADOWS LLC, KRISTIN W. MACKEY,
AND DEAN MACKEY,
Appellees.

Opinion
No. 20150549-CA
Filed February 2, 2017

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 100403908

Denver C. Snuffer Jr., Steven R. Paul, and William T.
Jennings, Attorneys for Appellants

Craig Carlile and Brent D. Wride, Attorneys for
Appellees David R. Simpson, Landmark Real Estate
Inc., Wood Springs LLC, and Pheasant
Meadows LLC

Aaron R. Harris, Attorney for Appellees Kristin W.
Mackey and Dean Mackey

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES KATE A. TOOMEY and JILL M. POHLMAN concurred.

VOROS, Judge:

¶1    Plaintiffs Leslie D. Mower and related entities LD III LLC
and LD Ranch LLC (collectively, Mower) appeal the district
court's grant of summary judgment and other rulings whose
combined effect was to deny all of Mower's claims. We affirm.

BACKGROUND

¶2    This case involves Mower's purchase of property in Hobble Creek Canyon for the purpose of building a ranch and equestrian center. Leslie Mower authorized her husband, Ken Dolezsar, to acquire the necessary property. Dolezsar in turn enlisted the help of real estate agent David Simpson. To assemble the parcels needed for Mower's equestrian center, Simpson negotiated purchases, trades, and exchanges among the owners of several parcels. Some of these exchanges involved transferring parcels of Mower's land to neighboring landowners, including Kristin and Dean Mackey (the Mackeys). In the end, Mower acquired the property necessary to build the equestrian center. Dolezsar died four months after all the transfers closed. Mower sued Simpson, the Mackeys, and others for fraud and related causes of action in connection with the transactions.

ISSUES

¶3    Mower asserts five contentions on appeal. First, she contends that the district court erred by ruling her declaration inadmissible.

¶4    Second, she contends that the district court erred by granting summary judgment in favor of Simpson.

¶5    Third, she contends that the district court erred by ruling that the statute of limitations had run on her claims.

¶6    Fourth, she contends that the district court erred by denying her motion for reconsideration.

¶7    Finally, she contends that the district court erred by granting summary judgment in favor of the Mackeys.

ANALYSIS

I. The Mower Declaration

¶8    Mower contends that "the trial court erred when it struck the Mower Declaration as inadmissible, finding it was contradicted by her deposition testimony or contained inadmissible speculation or conclusions, without giving any reasoning or support."

¶9    Simpson moved for summary judgment on each of Mower's claims; Mower opposed the motion. After filing her memorandum in opposition, Leslie Mower also filed her own declaration (the Mower Declaration) disputing various facts that Simpson asserted were undisputed. Simpson moved to strike the Mower Declaration on the ground that "it contradict[ed] her prior sworn deposition testimony and consist[ed] of unsubstantiated opinions and conclusions." Simpson's supporting memorandum contrasted each statement in the Mower Declaration with Mower's earlier deposition testimony.

¶10   The district court ruled the Mower Declaration inadmissible on the ground that "it consists of nothing but statements directly contradicted by her prior deposition testimony and unsubstantiated opinions and conclusions."

¶11   District courts generally have "broad discretion to decide motions to strike summary judgment affidavits." *Portfolio Recovery Assocs. v. Migliore*, 2013 UT App 255, ¶ 4, 314 P.3d 1069 (citation and internal quotation marks omitted). "We review a district court's decision on a motion to strike affidavits submitted in support of or in opposition to a motion for summary judgment for an abuse of discretion." *Id.* "An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was

no evidentiary basis for the trial court's ruling." *Id.* (citation and internal quotation marks omitted).

A.     The Mower Declaration contradicted Mower's deposition.

¶12     Mower contends that the district court erred in ruling the Mower Declaration inadmissible because it contains "statements directly contradicted by her prior deposition testimony."

¶13     "'[W]hen a party takes a clear position in a deposition, that is not modified on cross-examination, [she] may not thereafter raise an issue of fact by [her] own affidavit which contradicts [her] deposition, unless [she] can provide an explanation of the discrepancy.'" *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 39 n.33, 215 P.3d 143 (quoting *Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983)). Moreover, "[a]s a matter of general evidence law, a deposition is generally a more reliable means of ascertaining the truth than an affidavit, since a deponent is subject to cross-examination and an affiant is not." *Webster*, 675 P.2d at 1172.

¶14     On appeal Mower contends that a written power of attorney that she gave to Dolezsar "provides no basis to strike the Mower Declaration." In her declaration Mower averred that she had "never authorized or instructed Ken Dolezsar to have David Simpson title property in David Simpson's name or in the name of an entity he owned or controlled." Simpson argued below that this assertion contradicted Mower's deposition testimony that she had given Dolezsar power of attorney to act for her in relation to the Hobble Creek real estate transactions. But Mower maintains that no discrepancy exists, because in her deposition she "testified that she held onto the power of attorney until March 2007," the date she entered prison in California, and several months after the challenged real estate transactions had closed. In other words, she testified that she gave her written

power of attorney to Dolezsar only after he had completed the equestrian center acquisitions.[1]

¶15 In her deposition, Leslie Mower testified that Dolezsar "was managing whatever affected me. So whatever affected me [he] had power of attorney to take care of in my stead." She testified that Dolezsar acted as her agent and managed her business affairs while she was in prison, after she gave him her written power of attorney. But she also testified that he acted as her agent before she gave him that written power of attorney:

> Q. Paragraph 69 [says], "Further, Simpson transferred, gave or traded a part of the real property he purchased with [Mower's] funds to Mackeys without [Mower's] authorization." [Dolezsar] had the power of attorney to act in your name, didn't he?
>
> A. He had the fiduciary responsibility to take care of me and to do what I asked him to do up at the ranch, yes.
>
> Q. According to the Complaint, the transfers that are referred to in paragraph 69 occurred on August 23rd of 2006. You had not yet gone to prison; correct?

---

1. Mower also cursorily argues that certain other statements in her declaration are "not contradicted by her deposition testimony" and "not contradicted by . . . the deposition testimony." However, Mower does not further analyze this argument or support it with citations to the record as required by rule 24(a)(9) of the Utah Rules of Appellate Procedure. We therefore do not discuss it further.

A. That is correct.

Q. But [Dolezsar] was acquiring property for your benefit using your funds during that period of time; correct?

A. Correct.

Thus, Mower testified that even before she gave Dolezsar a written power of attorney, she had authorized him to acquire property for the ranch on her behalf.

¶16   Furthermore, Mower's fraud claims rely on Dolezsar's status as her agent during his dealings with Simpson. As Simpson argued below without contradiction, if Dolezsar "wasn't the agent, [Mower's] entire case against Mr. Simpson evaporates because she had no dealings with Mr. Simpson at all." That is, Mower's own claims depend on Dolezsar acting as her agent even before she gave him a written power of attorney.

¶17   In sum, Mower has not shown that the district court abused its discretion in concluding that the Mower Declaration contradicted her deposition testimony.

B.    The Mower Declaration contained conclusory and speculative statements.

¶18   Mower contends that the district court abused its discretion in ruling her declaration inadmissible because it contains "unsubstantiated opinions and conclusions."

¶19   "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah

R. Civ. P. 56(e).[2] "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Utah R. Evid. 602.

¶20 Mower maintains that her declaration asserts "specific facts showing a genuine issue for trial." Mower offers the following example of a specific fact showing a genuine issue for trial: "Simpson represented to me and my lawyers, on or after July 17, 2007, that he had transferred all the property to LD Ranch that he acquired in Hobble Creek Canyon with my personal funds or LD III's funds." But Mower testified in her deposition that "Ken [Dolezsar]"—not David Simpson—"made that statement to me." This statement was thus excludable on the ground that it contradicted Mower's deposition testimony.

¶21 Moreover, Mower's declaration contains numerous statements lacking specificity or foundation:

> *I deny* the claim that my former husband, Kenneth Dolezsar, instructed or authorized David Simpson to acquire property in Hobble Creek Canyon in his own name or in the name of any entity which he owned or controlled.
>
> . . . .
>
> For purposes of this motion, *I deny* the Mackeys purchased the Mackey Parcel. Mackeys have not proved to my satisfaction they properly acquired any of the Mackey parcel.

---

2. Throughout this opinion we cite to the 2013 version of the Utah Rules of Civil Procedure, which was in effect at the time of the proceedings in the district court.

. . . .

> During the time of the property acquisitions in
> 2005 and 2006, *I believe* Simpson avoided contact or
> communication with me because he knew based on
> previous problems I had in dealing with Simpson
> that I would not approve of his representing me or
> my interests in any way.

(Emphases added.) These averments read less like testimony
than like denials in an answer. And Mower makes no attempt to
show how her speculations about what other people discussed
in her absence or why someone avoided contact with her could
possibly be admissible into evidence. The district court did not
abuse its discretion in excluding these statements as
"unsubstantiated opinions and conclusions."

¶22 Because Mower's declaration testimony either
contradicted her deposition testimony or set forth
unsubstantiated opinions and conclusions, the district court did
not abuse its discretion in ruling Mower's declaration
inadmissible.

### II. Summary Judgment for Simpson Based on Lack of a Factual Dispute

¶23 The district court granted summary judgment for
Simpson on two alternative grounds: that Mower's claims were
barred by the statute of limitations and that Mower did not
provide "any evidence or any citations to depositions or
affidavits to show that the Simpson Defendants engaged in
fraud, negligent misrepresentation, a breach of fiduciary duties,
or conspiracy." On appeal, Mower challenges both grounds.

¶24 Mower contends that "the trial court erred when it
granted summary judgment to Simpson and deemed all of
[Simpson's] facts uncontroverted based on a hyper-stringent

reading of Rule 7(c)(3)" of the Utah Rules of Civil Procedure. Specifically, Mower argues that "[t]he trial court refused to consider all the facts in the Court Record and improperly found [Simpson's] facts unopposed." "Based on the fiction of unopposed facts," Mower argues, "the trial court proceeded to make findings and conclusions supporting summary judgment."

¶25    After briefing by both parties and oral argument, the district court identified undisputed facts. Although Mower had attempted to dispute Simpson's facts, the court noted that Simpson's facts were supported by "very detailed citation to, or quotes from, various depositions"; "citations to numerous exhibits attached to the memorandum in support"; or "citations to the complaint." On the other hand, Mower's opposition to summary judgment contained "no citation to any deposition, no citation to any affidavit, and no citation to any exhibit." Consequently, the court accepted Simpson's factual assertions and rejected Mower's:

> The rule requires more than a denial or unsupported factual allegations; to defeat a motion for summary judgment, the opposing party must explain the basis for denial by providing citation to relevant materials. As the Plaintiffs have failed to cite any material to support the denials, the Simpson Defendants' facts are deemed admitted. Utah R. Civ. P. 7(c)(3)(A); *see also Jensen v. Skypark Landowners Assoc.*, 2013 UT App 48, ¶ 2, 299 P.3d 609.

> Plaintiffs failed to properly dispute any of the undisputed facts set forth in the Simpson Defendants' Statement of Undisputed Facts. Accordingly, all those facts are deemed admitted. Plaintiffs' attempt to incorporate additional facts by reference to [the Mower Declaration] is likewise

futile as the declaration is inadmissible because it consists of nothing but statements directly contradicted by her prior deposition testimony and unsubstantiated opinions and conclusions.

Based on Simpson's statement of undisputed facts, the court granted Simpson summary judgment on each of Mower's claims.

¶26   "We review the district court's grant of a motion for summary judgment for correctness." *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 12, 192 P.3d 858 (citing *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 21, 54 P.3d 1054). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). If the moving party demonstrates that no genuine issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a material factual dispute:

> The moving party has the burden of presenting evidence to demonstrate that no genuine issue of material facts exists and that judgment as a matter of law is proper. Utah R. Civ. P. 56(e). However, once the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact. Utah R. Civ. P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial." Utah R. Civ. P. 56(e). The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue.

*Waddoups*, 2002 UT 69, ¶ 31, (additional citations omitted).

¶27    Rule 7(c)(3)(B) of the Utah Rules of Civil Procedure requires that a party opposing summary judgment set forth a "verbatim restatement of each of the moving party's facts that is controverted" and, for each controverted fact, "provide an explanation of the grounds for any dispute, supported by citation to relevant materials, such as affidavits or discovery materials."

¶28    Here, Mower cited no facts in opposing Simpson's motion for summary judgment. Her opposition to Simpson's motion disputed certain factual statements but contained no citations to supporting materials. The district court concluded that Mower did not "provide any evidence or any citations to depositions or affidavits" to support her claims against Simpson. Accordingly, the district court granted summary judgment for Simpson.

¶29    On appeal Mower argues that her declaration supported her factual assertions. However, as the district court explained, Mower's "attempt to incorporate additional facts by reference to [the Mower Declaration] [was] likewise futile as the declaration [was] inadmissible." Because we have already concluded that the district court did not abuse its discretion in striking the Mower Declaration, *see supra* Part I, the court was within its authority to refuse to consider Mower's unsubstantiated facts at summary judgment.[3]

---

3. Mower also relies on the declaration of Paul Reeb, in which he asserted that "Hobble Creek Investments did not demand the 4.5

(continued…)

¶30    In sum, we reject Mower's claim that the district court erred in granting summary judgment, having concluded that Mower failed to "support by citation to the relevant materials . . . each of the moving party's facts that is controverted." *See* Utah R. Civ. P. 7(c)(3)(B).

### III. Summary Judgment for Simpson Based on the Statute of Limitations

¶31    Mower contends that the district court erred in granting summary judgment for Simpson on the ground "that the statute of limitations had run on [her] claims." Mower maintains that application of the equitable discovery rule tolls the statute of limitations against her claims.

¶32    The district court ruled that Mower's claims were barred by the statute of limitations because "Dolezsar, Mower's agent, was aware of the details of each of these transactions, and his knowledge is imputed to Mower." The district court found that "the last event to complete the closing" of the parcel on which Mower's Equestrian Center now sits "occurred on August 27, 2006" and hence that the statute of limitations had run on Mower's claims:

> The closings constitute the time when [Mower's] causes of action would have accrued, as that was the time any alleged damages would have been incurred. Dolezsar, Mower's agent, was aware of

---

(…continued)

acres from the Mackey Parcel and would have taken any property contiguous to its own to make up the 10 total acres." But Mower merely refers to this allegation; she does not show how it created a dispute of fact that would defeat summary judgment.

the details of each of these transactions, and his knowledge is imputed to Mower. Therefore, the claims for fraud and negligent misrepresentation would have been barred as of August 27, 2009, more than a year before the complaint was filed. Any claims of conversion, breach of fiduciary duties, unjust enrichment and conspiracy were barred within four years of each closing, the latest of which would have been August 27, 2010. Accordingly, [Mower's] claims are barred by the statute of limitations.

Finding that the relevant statutes of limitation had run on each of Mower's claims, the district court granted summary judgment in favor of Simpson. "A trial court's determination of whether a statute of limitations has expired is a question of law reviewed for correctness." *Crawford v. CBS Outdoor, Inc.*, 2008 UT App 51U, para. 4 (per curiam).

¶33 "As a general rule, a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (citation and internal quotation marks omitted). "Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred. Mere ignorance of the existence of a cause of action will neither prevent the running of the statute of limitations nor excuse a plaintiff's failure to file a claim within the relevant statutory period." *Id.*

¶34 Two exceptions to the general rule allow a statute of limitations to be tolled "until the discovery of facts forming the basis for the cause of action." *Id.* ¶ 21 (citation and internal quotation marks omitted). The first exception, known as the "statutory discovery rule," "involves situations in which a relevant statute of limitations, by its own terms, mandates

application of the discovery rule."[4] *Id.* The second exception, known as the "equitable discovery rule," "involves situations where a relevant statute of limitations provides only a fixed limitations period with no statutory discovery rule exception." *Id.* ¶ 24. The equitable discovery rule "may operate to toll an otherwise fixed statute of limitations" in two situations. *Id.* ¶ 25. First, "where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct." *Id.* (citation and internal quotation marks omitted). And second, "where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action." *Id.* ¶ 25 (citation and internal quotation marks omitted).

¶35  The knowledge of an agent concerning the business which he is transacting for his principal is imputed to his principal. *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 16, 61 P.3d 1009. Thus, if Dolezsar was Mower's agent, the law imputes to his principal, Mower, his knowledge of the transactions with Simpson. Accordingly, our resolution of the underlying statute of limitations issue turns on whether Dolezsar was Mower's agent.

¶36  Mower argues, based solely on the Mower Declaration, that Dolezsar was not her agent: "Whether Dolezsar was [Mower's] agent, whether he acted within the scope of that agency, and whether his knowledge at the time of closing can be imputed to [Mower] are all disputed in the Mower Declaration." As noted, Mower's sole support for this statement is the Mower Declaration, which we have already concluded was properly

---

4. Mower does not contend that the statutory discovery rule applies.

ruled inadmissible. *See supra* Part I. Accordingly, Mower's claim fails on this ground alone.

¶37 Moreover, the undisputed facts support the district court's conclusion that Dolezsar acted as Mower's agent. Over half a dozen times, Mower's complaint alleges that Simpson "told" Mower something or "represented" something to Mower. Yet Mower admitted in her summary judgment response that "Simpson never had any conversations with Mower regarding the purchase and acquisition of any of the properties assembled by Simpson and Dolezsar for a horse ranch and equestrian center." In other words, Mower's own claims depend on Dolezsar's having acted as her agent. And, as shown above, Mower testified in her deposition that Dolezsar "had the fiduciary responsibility to take care of me and to do what I asked him to do up at the ranch" and was acquiring property for her benefit using her funds.

¶38 As Dolezsar's principal, Mower is imputed with Dolezsar's knowledge regarding the various property deals. *See Wardley*, 2002 UT 99, ¶ 16. And Mower does not dispute that Dolezsar had knowledge of the challenged property transactions at the time of closing. Additionally, Mower has not argued or provided any evidence that she was not "aware of [her] cause[s] of action because of [the Appellees'] concealment or misleading conduct . . . ." *See Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 25, 108 P.3d 741. Without showing exceptional circumstances or that Appellees concealed or otherwise caused Mower to not learn of the facts leading to her complaint, Mower has not demonstrated that the district court erred when it ruled equitable tolling did not apply. [5]

---

5. Mower cites *Jensen v. IHC Hospitals, Inc.* for the proposition that, "where the agent has interests in the transaction adverse to

(continued…)

¶39   We therefore conclude that the district court correctly ruled that Mower's claims against Simpson are barred by the statute of limitations.

IV. Motion for Reconsideration

¶40   Mower contends that "[t]he trial court abused its discretion when it denied [Mower's] motion for reconsideration when the case was not fully resolved and the court record demonstrated genuine issues of material fact."

¶41   After the district court granted Simpson's motion for summary judgment, Mower filed a motion for reconsideration. In the motion, Mower urged the court to "reconsider its ruling and deny summary judgment and allow the parties to proceed to trial on the merits of their claims." Mower's motion relied on "the disputed issues of fact demonstrated by [her] declaration and the other supporting materials submitted in opposition to Simpson's motion for summary judgment."

¶42   The district court denied the motion based on the court's oral ruling made at a previous hearing. That hearing began with a statement from the court about the "rarity involved" and "extraordinary circumstances" required for a court to grant a motion for reconsideration. Mower's counsel explained that

_____

(…continued)

the principal's, or where the agent colludes with third parties whose interests are adverse to the principal's interests, knowledge of the facts at issue will not be imputed to the principal." 2003 UT 51, ¶ 63, 82 P.3d 1076 (citations and internal quotation marks omitted). But Mower points to no admissible evidence from which a finder of fact could conclude that Dolezsar's conduct implicates this exception to the general rule of agency.

summary judgment was improper when material facts—many contained in Mower's deposition—were still in dispute. Simpson's counsel responded that reconsideration was improper under any of the criteria that Utah courts analyze when deciding to grant or deny a motion for reconsideration. The court denied Mower's motion on the ground that it did not rise "to that level of the rare circumstance" under the general criteria involved.[6]

¶43   "Because trial courts are under no obligation to consider motions for reconsideration, any decision to address or not to address the merits of such a motion is highly discretionary." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615. "We will not disturb a district court's decision to grant or deny such a motion absent an abuse of discretion. 'Under this standard, [a] trial court's ruling may be overturned *only* if there is no reasonable basis for the decision.'" *State v. Ruiz*, 2012 UT 29, ¶ 23, 282 P.3d 998 (alteration in original) (quoting *Tschaggeny*, 2007 UT 37, ¶ 16).

¶44   Mower does not show that there is no reasonable basis for the decision. On appeal she relies on cases holding merely that a court may reconsider a prior ruling. *See, e.g.*, *Timm v. Dewsnup*, 851 P.2d 1178 (Utah 1993). But none of these cases show that the court abused its discretion here. Mower argues that reconsideration was proper because she "showed contested issues of fact and cured any possible technical defect in the pleadings." This argument appears to refer to her declaration as

---

6. The district court relied on a statement from our supreme court that, while "the extraordinary circumstance may arise when it is appropriate to request a trial court to reconsider a ruling," these occasions are "rare." *See Shipman v. Evans*, 2004 UT 44, ¶ 18 n.5, 100 P.3d 1151, *abrogated on other grounds by Utahns for Better Dental Health-Davis, Inc. v. Davis County Clerk*, 2007 UT 97, 175 P.3d 1036.

the source of contested facts. But we have already concluded that her declaration was properly ruled inadmissible. *See supra* Part I. Because Mower did not present any new evidence or otherwise show why her motion involved anything other than a second challenge to the court's prior summary judgment ruling on the same issues, she has not shown that the district court abused its discretion by denying her motion for reconsideration. *See Tschaggeny*, 2007 UT 37, ¶ 16.

V. Summary Judgment for the Mackeys

¶45 Mower contends that "[t]he trial court erred in granting the Mackey defendants summary judgment based upon the law of the case." Specifically, she argues that the court erred in granting the Mackeys summary judgment based on the prior summary judgment in favor of Simpson because "a Motion for reconsideration, an opposition to the Mackey Motion for Summary Judgment, the Mower Declaration, and the Reeb Declaration," had all been "add[ed] to the record before the Mackey hearing." "The record," Mower argues, "contained all the required citations the lower court claimed were missing before." In essence Mower argues that by the time the Mackeys' motion for summary judgment was under consideration, she had cured the flaws that had caused her earlier opposition to Simpson's motion for summary judgment to fail.

¶46 The district court granted the Mackeys summary judgment on each of Mower's claims. In its ruling the district court discussed the concept of "the law of the case" before explaining why summary judgment was appropriate for each of Mower's claims.

¶47 "The application of the law of the case doctrine is ordinarily reviewed under an abuse of discretion standard. However, when a legal question is presented to an appellate court in law-of-the-case packaging, the abuse of discretion

standard must yield to the correctness standard of review." *McLaughlin v. Schenk*, 2013 UT 20, ¶ 19, 299 P.3d 1139 (citation and internal quotation marks omitted). Although Mower argues that the standard of review in this case is correctness, we see no legal question presented in law-of-the-case packaging. Therefore, we review this claim under the abuse of discretion standard. *See id.*

¶48    "The law-of-the-case doctrine generally provides that a decision on an issue at one stage of a case is binding in successive stages of the same litigation." *Plumb v. State*, 809 P.2d 734, 739 (Utah 1990). "However, this doctrine does not prevent a judge from reconsidering his or her previous nonfinal orders," *id.*, but "'merely expresses the practice of courts generally to refuse to reopen what has been decided,'" *id.* (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). "The exceptional circumstances under which courts have reopened issues previously decided are narrowly defined: (1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Thurston v. Box Elder County*, 892 P.2d 1034, 1039 (Utah 1995).

¶49    Mower maintains that "the case posture changed dramatically" between the Simpson and the Mackey summary judgment motions. However, she fails to specify any of those changes or cite the record as required by the appellate rules. *See* Utah R. App. P. 24(a)(9). Consequently, Mower has failed to carry her burden of persuasion on appeal. *See State v. Nielsen*, 2014 UT 10, ¶ 34, 326 P.3d 645. Furthermore, given the arguments in Mower's briefing, it appears likely that the dramatic change Mower refers to is the filing of her declaration,

and we have affirmed the district court's ruling excluding that declaration. *See supra* Part I.[7]

¶50　Because Mower has not demonstrated that the district court committed any error, we affirm the summary judgment in favor of the Mackeys.

## CONCLUSION

¶51　For the foregoing reasons, the judgment of the district court is affirmed.

––––––––––

7. Mower makes several factual allegations in this section of her brief. For example, she alleges that the "Mackeys have always admitted that they have in their possession 12–14 acres of property Plaintiffs paid for and that should be returned to Plaintiffs." But none of these factual allegations are supported by citations to the record. Rule 24(a)(9) of the Utah Rules of Appellate Procedure places on the appellant, not the appellate court, the burden of identifying the parts of the record relied on by the appellant. Unsupported factual allegations do nothing to advance a litigant's case on appeal.