2017 UT App 232

# THE UTAH COURT OF APPEALS

SHARROL ANDERTON, MARY BLANCHARD, TERRY CHRISTENSEN,
AND DUANE BOREN JR.,
Appellants,

*v.*

DAVID L. BOREN AND SHERRON L. BOREN,
Appellees.

Opinion
No. 20160145-CA
Filed December 21, 2017

Eighth District Court, Roosevelt Department
The Honorable Samuel P. Chiara
No. 143000048

Russell T. Monahan, Attorney for Appellants

Clark B. Allred and Brad D. Brotherson, Attorneys
for Appellee David L. Boren

Diana J. Huntsman, Sherri L. Walton, Jack D. Smart,
D. Karl Mangum, Attorneys for Appellee
Sherron L. Boren

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN, Judge:

¶1    Sharrol Anderton, Mary Blanchard, Terry Christensen, and Duane Boren Jr. (collectively, Appellants) appeal the district court's grant of summary judgment in favor of David L. Boren and Sherron L. Boren (collectively, Appellees). We affirm and remand to the district court for the limited purpose of calculating Appellees' attorney fees incurred on appeal.

BACKGROUND

¶2    Duane Boren Sr. and his wife, Sherron, had six children—Sharrol, Mary, Terry, Duane Jr., David, and Lucky. In 1980, Duane Sr. and Sherron created the Duane Boren Family Living Trust (the Trust). At that time, the Trust was funded with only a life insurance policy, but additional assets were later added to the Trust. A joinder agreement, signed contemporaneously with the trust agreement and incorporated by reference, appointed Sharrol, Mary, Duane Jr., and Terry Lee Monks as co-trustees.

¶3    In 1985, Duane Sr. and Sherron signed an amendment to the Trust appointing Sherron as trustee. Duane Sr. later crossed out Sherron's name and wrote in David's name.[1] A second amendment, executed in 1990, designated David as successor trustee and changed the distribution of the assets by reallocating the assignment of mineral rights; assigning "all agricultural equipment, all livestock, all water rights and the surface rights to all cultivated, pasture or hay ground" to David and Lucky[2] and the remaining "waste ground" real estate to the other children; and dividing the remainder of the estate equally among the children.

¶4    Duane Sr. died in December 1992. At the time of Duane Sr.'s death, he and Sherron "owned a farm with some equipment and mineral rights." Duane Sr.'s undivided one-half interest in the couple's property was distributed to David as trustee of the Trust. Sherron owned the other one-half interest. The Trust

---

1. Various handwritten strike-outs and additions in the joinder agreement and the subsequent amendments somewhat confuse the issue of who was appointed as trustee and when, but the identity of the trustee is not in dispute.

2. Lucky passed away in 2001.

assets were to be used for the benefit and at the direction of Sherron during her life.

¶5    From 1993 to the present, David has managed the Trust properties and properties owned by Sherron with her input. At some point, Sherron deeded half of her undivided one-half interest in the farm to David. In 2011, David, as trustee, and Sherron entered into a formal agreement acknowledging that David had "been operating and managing the Farm." The agreement granted David a salary of $1,200 per month "for operating and managing the farm" "on a part time basis," authorized the lease of farm equipment from David, and permitted David to graze his cattle on the farm.

¶6    From 1993 to 2012, Appellants did not request an accounting from David. In October 2012, an attorney for Duane Jr. requested such information from David. Duane Jr.'s attorney and Appellants were provided with an inventory of the Trust, accountings for the Trust, and tax returns from 2008 through 2011, and were subsequently provided with accountings and tax returns for 2012, 2013, and 2014.

¶7    In 2014, Appellants filed a complaint against Appellees David and Sherron Boren, alleging that David had "stolen and embezzled money from the Trust," distributed Trust property to himself, forged documents, coerced Sherron to sign documents, given himself an "unauthorized salary," commingled his assets with those of the Trust, and made an untruthful accounting. Based on these allegations, Appellants brought causes of action for breach of the Trust, breach of fiduciary duty, accounting, and negligent misrepresentation. Appellants also sought a declaratory judgment to have Appellees "removed as Trustees of the Trust."

¶8    In January 2015, Appellees deposed Appellants. In their depositions, each of the Appellants "admitted they did not have any support for the allegations [in their complaint], or admitted

that they had not reviewed the accountings and supporting documents provided to them concerning the Trust." "Based on [Appellants'] own testimony that they had no facts to support their claims," Appellees moved for summary judgment.

¶9    In opposition to Appellees' motion for summary judgment, Duane Jr. filed a declaration (the Declaration) in which he made additional assertions regarding David's actions. Appellees filed a motion to strike the Declaration on the ground that the Declaration attempted "to contradict Duane Boren Jr.'s deposition testimony, . . . lack[ed] admissible facts, and . . . relie[d] on inadmissible suppositions, opinions, argument and innuendo." The district court granted Appellees' motion to strike on two alternative bases: first, that the Declaration contradicted Duane Jr.'s deposition testimony and, second, that the Declaration did "not provide facts on the pertinent issues, but merely the opinions of Duane Boren Jr."

¶10    After striking the Declaration, the court also granted Appellees' motion for summary judgment. The court determined that all four Appellants had "admitted during their depositions that there were no facts to support" their allegations of embezzlement, forgery, self-dealing, and coercion. The court further determined that, because Appellants were not income beneficiaries, they were not entitled to an accounting under the terms of the Trust. The court also concluded that Appellants had made "no showing" that David had unlawfully commingled his personal assets with those of the Trust. Finally, the court determined that there was "no evidence to support the argument that the farm has been operated in contravention [of Sherron's] wishes, or that the salary paid to [David] for managing the Trust was not appropriate. The fact that the farm had a tax loss, without more, does not support a claim of mismanagement." Because the court determined that there were no facts to support Appellants' claims, it granted summary judgment in favor of Appellees. The court also awarded Appellees attorney fees

pursuant to Utah Code section 75-7-1004. *See infra* ¶ 32. Appellants challenge the district court's ruling.

ISSUES AND STANDARDS OF REVIEW

¶11 Appellees dispute Appellants' standing to bring this action, so we must address that question before reaching the merits of Appellants' arguments. *See Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 ("Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." (brackets, citation, and internal quotation marks omitted)). "[T]he question of whether a given individual or association has standing to request a particular relief is primarily a question of law[.]" *Kearns-Tribune Corp. v. Wilkinson*, 946 P.2d 372, 373 (Utah 1997). To the extent that there are "factual findings that bear on the issue" of standing, we "review such factual determinations made by a trial court with deference." *Id.* at 373–74. We ultimately conclude that Appellants have standing, and we therefore reach the merits of Appellants' arguments.

¶12 Appellants first contend that the district court erred in ruling the Declaration inadmissible. Affidavits supporting or opposing a motion for summary judgment "must be made on personal knowledge, must set out facts that would be admissible in evidence, and must show that the affiant or declarant is competent to testify on the matters stated." Utah R. Civ. P. 56(c)(4). "Accordingly, affidavits containing allegations that 'are not based on personal knowledge, lack foundation, are conclusory, [or] contain hearsay' may be stricken." *Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 13, 241 P.3d 375 (quoting *Murdock v. Springville Mun. Corp.*, 1999 UT 39, ¶ 27, 982 P.2d 65). "Similarly, '[a]ffidavits reflecting an affiant's unsubstantiated conclusions and opinions are inadmissible.'" *Id.* (alteration in original) (quoting *Cabaness v. Thomas*, 2010 UT 23, ¶ 33, 232 P.3d 486). "District courts generally have broad

discretion to decide motions to strike summary judgment affidavits," and we therefore "review a district court's decision on a motion to strike affidavits submitted in support of or in opposition to a motion for summary judgment for an abuse of discretion." *Mower v. Simpson*, 2017 UT App 23, ¶ 11, 392 P.3d 861 (citation and internal quotation marks omitted); *see also Murdock*, 1999 UT 39, ¶ 25 (observing that "an affidavit is simply a method of placing evidence of a fact before the court" and concluding that a district court's "decision to admit evidence is reviewed under a broad grant of discretion"). However, we review a district court's ultimate grant or denial of summary judgment for correctness. *Mower*, 2017 UT App 23, ¶ 26.

¶13    Second, Appellants contend that the district court erred in granting summary judgment in favor of Appellees on Appellants' actions for breach of trust, breach of fiduciary duty, request for accounting, and request for declaratory judgment. "We review the district court's grant of a motion for summary judgment for correctness." *Id.* ¶ 26 (citation and internal quotation marks omitted).

¶14    Finally, Appellants contend that the district court improperly awarded attorney fees to Appellees. "The appropriate standard for reviewing equitable awards of attorney fees is abuse of discretion." *Fisher v. Fisher*, 2009 UT App 305, ¶ 8, 221 P.3d 845 (brackets, citation, and internal quotation marks omitted). "[W]e give no deference to the [district] court's determination as to whether attorney fees were allowed under a statute." *Id.*

ANALYSIS

I. Standing

¶15    Before addressing Appellants' arguments, we must first determine the threshold issue of whether they have standing.

"Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (brackets, citation, and internal quotation marks omitted). "Traditional standing criteria require that the interests of the parties be adverse and that the party seeking relief have a legally protectable interest in the controversy." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 8, 207 P.3d 1221 (citation and internal quotation marks omitted). "Either party, or the court on its own motion, may properly raise the issue of standing for the first time on appeal." *Wade v. Burke*, 800 P.2d 1106, 1108 (Utah Ct. App. 1990).

¶16    Appellees assert that Appellants lacked standing to bring the case because they do not have a legally protectable interest in the controversy. *See Hogs R Us*, 2009 UT 21, ¶ 8. The terms of the Trust grant Sherron a special power of appointment that permits her to "exclude any one or more of the beneficiaries" at her death by will. Appellees assert that Sherron's ability to remove Appellants as beneficiaries precludes their interest from being legally protectable.

¶17    Appellees' argument relies on *Montrone v. Valley Bank & Trust Co.*, 875 P.2d 557 (Utah Ct. App. 1994), in which this court held that beneficiaries of a trust did not have standing to seek an accounting, because the settlor retained a general power of appointment that permitted her to "negate[] the trustee's duties to account to her children as beneficiaries." *Id.* at 559. This case is distinguishable from *Montrone* because there is no evidence that Sherron has taken the necessary steps to exercise her power of appointment to remove any of her children as beneficiaries and, even if she had, any such exercise of the power would not be effective until after her death. The mere potential for Appellants to be removed as beneficiaries does not negate their standing when they currently remain beneficiaries under the terms of the Trust.

¶18   Appellees also argue that Appellants do not have standing to pursue claims relating to the operation of the farm because the second amendment to the Trust divests them of any interest in the farm land and equipment. However, the management of the farm could very well have an impact on the viability of the other Trust assets in which Appellants do retain a beneficial interest. Accordingly, we determine that Appellants have standing to bring their claims.

## II. The Declaration

¶19   Appellants contend that the district court abused its discretion by granting Appellees' motion to strike the Declaration. "An abuse of discretion may be demonstrated by showing that the district court relied on an erroneous conclusion of law or that there was no evidentiary basis for the [district] court's ruling." *Mower v. Simpson*, 2017 UT App 23, ¶ 11, 392 P.3d 861 (citation and internal quotation marks omitted).

¶20   The district court articulated two alternative bases for striking the Declaration. First, it determined that the Declaration violated "case law which disallows affidavits made after sworn testimony which contradicts that testimony." "The general rule in Utah is that an affiant may not raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." *Gaw v. Department of Transp.*, 798 P.2d 1130, 1140 (Utah Ct. App. 1990) (citation and internal quotation marks omitted). Appellants argue that this rule cannot be applied in the present case, because it applies only when a party "takes a clear position in a deposition." *See Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983). Because Duane Jr. denied having knowledge of facts supporting the complaint in his deposition, Appellants assert that he took no clear position. The court determined that such a denial is a clear position and concluded that the result urged by Appellants was contrary to the intent of *Webster*, concluding, "A person cannot avoid being deposed and avoid answering questions by claiming

no knowledge, only to subsequently file a self-serving affidavit in order to avoid summary judgment." It is unnecessary for us to resolve the question of whether claiming no knowledge may constitute a "clear position" under *Webster*, because we ultimately agree with the second basis for the district court's decision—that "the Declaration does not provide facts on the pertinent issues, but merely the opinions of Duane Boren Jr."

¶21 "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, must set out facts that would be admissible in evidence, and must show that the affiant or declarant is competent to testify on the matters stated." Utah R. Civ. P. 56(c)(4). In his declaration, Duane Jr. made a number of assertions that appear to be based on "information and belief" rather than personal knowledge, such as his assertion that David "used the assets of the Family Trust to purchase . . . items for personal use." *See Walker v. Rocky Mountain Recreation Corp.*, 508 P.2d 538, 542 (Utah 1973) ("Statements made merely on information and belief will be disregarded."). Duane Jr. cited no facts in support of his assertion that the items in question were purchased for David's personal use rather than for the benefit of the farm. He attempted to support his assertion by referring to a ledger of farm expenses, but there is no indication in this ledger that the items in question were purchased for David personally; Duane Jr. simply assumed that certain items, by their nature, must have been personal.

¶22 Duane Jr. also offered opinions regarding the farm's finances that went beyond the realm of permissible lay witness testimony. *See* Utah R. Evid. 701 (providing that opinion testimony by lay witnesses is permitted only to the extent that it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge"). For example, he opined, based on his

review of the tax returns from 2008 to 2014 and the accountings, that the farm consistently operated "at a substantial loss," that those losses were the result of David using the Trust to pay the farm expenses while he pocketed farm profits, and that David's bookkeeping had been "sloppy and incomplete." Such conclusions are beyond the "ken of the average bystander" and thus exceed the scope of permissible lay opinion testimony. *See State v. Rothlisberger*, 2006 UT 49, ¶ 34, 147 P.3d 1176.

¶23   Further, nothing in the Declaration created an issue of material fact that could have precluded summary judgment. Duane Jr. asserted that David paid himself for labor on the farm, that the farm leased equipment from David, and that he allowed his personal cattle to graze on the farm. None of these facts, without more, support Appellants' claims of malfeasance. There is nothing inherently inappropriate about David paying himself for labor he performed on behalf of the farm or leasing equipment to the farm. Similarly, there is nothing inherently inappropriate about grazing his cattle on the farm in which he owned a 25% interest. "An affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create an issue of fact," *Smith v. Four Corners Mental Health Center, Inc.*, 2003 UT 23, ¶ 50, 70 P.3d 904 (citation and internal quotation marks omitted), and is therefore inadmissible, *see Cabaness v. Thomas*, 2010 UT 23, ¶ 33, 232 P.3d 486 ("Affidavits reflecting an affiant's unsubstantiated conclusions and opinions are inadmissible."); *accord Brown v. Jorgensen*, 2006 UT App 168, ¶ 20, 136 P.3d 1252. Thus, the district court did not exceed its discretion in striking the affidavit.

## III. Summary Judgment

¶24   Appellants next contend that the district court erred in granting Appellees' motion for summary judgment on Appellants' claims for breach of trust, breach of fiduciary duty, accounting, and declaratory judgment. "Summary judgment is appropriate only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law." *Mountain West Surgical Center, LLC v. Hospital Corp. of Utah*, 2007 UT 92, ¶ 10, 173 P.3d 1276. In reviewing the district court's grant of summary judgment, we "view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

¶25 Appellants' breach of trust and breach of fiduciary duty claims alleged that Appellees had commingled their personal property with the Trust property "to their own personal gain but to the detriment of the qualified beneficiaries," that they had engaged in self-dealing, that they had failed to invest the Trust assets and property prudently, and that they had failed to keep adequate records, provide adequate accounting, or communicate with Appellants "regarding the administration of the Trust." We agree with the district court that Appellants failed to raise a genuine issue of material fact with respect to these assertions.

¶26 First, Appellants failed to present evidence that Appellees commingled their property with the Trust property to the detriment of Appellants. In their depositions, each Appellant conceded that there was no evidence of commingling. Although Duane Jr. asserted that David had grazed his cattle on the farm, Appellants failed to present any evidence demonstrating that David did so at the Trust's expense. When asked about this in an interrogatory, David indicated that both he and "other family members" ran livestock on the farm at various times over the years and stated that "[t]he [T]rust was annually compensated for the use of its interest in the property." Further, the fact that David used the farm to graze his cattle does not alone suggest unlawful commingling or any detriment to the Trust beneficiaries, particularly given that he personally held a 25% interest in the farm.

¶27 Similarly, Appellants' assertion that David used Trust assets to purchase items for himself lacks support. Appellants

assert that David "used the assets of the Family Trust to purchase other items for his personal use, including but not limited to[:] 4 wheelers, camp trailers, motorbikes and snowmobiles." The document on which Appellants rely in support of this assertion is a page from a ledger showing Trust expenditures in the fall of 2010. The ledger does not indicate the purchase of camp trailers, motorbikes, or snowmobiles. It does show a down payment for a four-wheeler. This record merely indicates that the four-wheeler was purchased by the Trust, and there is no evidence to indicate that it was not actually purchased for the Trust's benefit. Appellants blame their failure to support their claim on Appellees' failure to keep adequate records. But there is not even a hint in the evidence that more complete records would have shown that the four-wheeler, or any other personal property, was purchased by the Trust for David's personal benefit.

¶28　Further, Appellants concede that "the commingling of assets is permitted if the Trustee maintains adequate records." Although Appellants claim that "there is no evidence that David Boren kept any records to maintain the separate identity of the Trust property from his own," they admitted during their depositions that they had not reviewed the accountings and tax returns provided to them and that they did not have any evidence to support their claim regarding David's allegedly inadequate recordkeeping. Appellants' bare assertions on this issue are insufficient to create an issue of fact regarding whether Appellees unlawfully commingled assets or whether they kept adequate records of any commingling. *See Kitchen v. Cal Gas Co.*, 821 P.2d 458, 461 (Utah Ct. App. 1991) ("[A] party may not merely rely on bald assertions . . . to overcome a motion for summary judgment.").

¶29　Appellants' assertion that Appellees engaged in self-dealing similarly suffers from a lack of evidentiary support. "A trustee has a duty of loyalty to the beneficiaries of a trust."

*Wheeler ex rel. Wheeler v. Mann*, 763 P.2d 758, 759 (Utah 1988). That duty of loyalty "requires the trustee to administer the trust solely in the interest of the beneficiary." *Id.* at 760 (citation and internal quotation marks omitted). "As such, a trustee is not permitted to engage in self-dealing, or to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." *Id.* (citation and internal quotation marks omitted). Appellants' only argument for self-dealing appears to rest on the fact that David took a salary as compensation for his work on the farm and leased his personal equipment to the farm. These facts alone do not support an allegation of self-dealing, and all four Appellants admitted in their depositions that they had no facts to support such an allegation. In fact, Sharrol indicated that she thought David's salary of $1,200 per month was "fine." All Appellants likewise indicated that they lacked any facts to support a claim that Appellees had failed to prudently manage the Trust.

¶30 Appellants also alleged that Appellees failed to provide them an accounting to which they were entitled "with respect to the administration of the Trust." But the Trust requires only that the trustee provide an accounting to "income beneficiaries." The only income beneficiary was Sherron. Thus, Appellants were not entitled to an annual accounting under the terms of the Trust. To the extent that Appellants may have been entitled to an accounting under Utah law, Appellees incurred no obligation to provide such an accounting until Appellants requested it in 2012, at which point it was provided. *See* Utah Code Ann. § 75-7-303(3) (Michie 1993) ("*Upon reasonable request*, a beneficiary is entitled to a statement of the accounts of the trust annually . . . ." (emphasis added)); *id.* § 75-7-811(3) (LexisNexis Supp. 2017) ("A trustee shall send to the qualified beneficiaries *who request it*, at least annually . . . , a report of the trust property . . . ." (emphasis added)). Thus, there is no evidence to support Appellants' allegations that Appellees failed to account or communicate. And contrary to their vague assertions that the accounting was

incomplete, Appellants admitted in their depositions that they lacked evidence to support this claim. Indeed, Appellants indicated that they had not even reviewed the accountings and documents provided to them.

¶31 Finally, Appellants assert that the district court should not have granted summary judgment on their request for declaratory judgment. But this assertion rests solely on Appellants' challenges to the district court's ruling on their other claims. Because we have determined that the district court did not err in granting summary judgment on those claims, we need not further address the declaratory judgment claim.

## IV. Attorney Fees

¶32 Appellants next contend that the district court improperly granted Appellees' motion for attorney fees. In the district court, Appellees requested their attorney fees pursuant to Utah Code section 75-7-1004, which provides, "In a judicial proceeding involving the administration of a trust, the court may, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Utah Code Ann. § 75-7-1004(1) (LexisNexis Supp. 2017). The district court awarded attorney fees and costs to Appellees after reviewing several factors enumerated in *Shurtleff v. United Effort Plan Trust*, 2012 UT 47, 289 P.3d 408, "that courts should consider when determining whether justice and equity warrant an award of costs and expenses." *Id.* ¶ 23 (identifying five non-exclusive factors).

¶33 On appeal, Appellants do not challenge the basis for the district court's award of attorney fees to Appellees. Indeed, Appellants concede that the district court "used the appropriate factors under *Shurtleff*." Appellants merely assert that the district court's attorney fees award should be reversed only if this court reverses the district court's order striking the Declaration and

granting summary judgment in favor of Appellees. Because we have concluded that the district court did not abuse its discretion in excluding the Declaration and did not err in granting summary judgment to Appellees, we need not address this argument further.

¶34 Finally, Appellees contend that they should be awarded their attorney fees and costs incurred on appeal. "[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Austin v. Bingham*, 2014 UT App 15, ¶ 33, 319 P.3d 738 (alteration in original) (citation and internal quotation marks omitted). Appellees received attorney fees below and have prevailed on appeal. Accordingly, we award Appellees their reasonable fees incurred on appeal in an amount to be determined by the district court on remand.

CONCLUSION

¶35 We conclude that Appellants have standing to bring their claims. We also conclude that the district court did not exceed its discretion in striking the Declaration and did not err in granting summary judgment in favor of Appellees. We therefore affirm the district court's ruling and remand for the limited purpose of permitting the district court to calculate Appellees' fees reasonably incurred on appeal.

———————