2022 UT App 17

## THE UTAH COURT OF APPEALS

HANSEN & MECHAM INVESTMENTS LLC, MA SQUARED LLC, AND
PATRICK HENRY & ASSOCIATES LLC,
Appellees,
*v.*
BRIAN HANSEN,
Appellant.

Opinion
No. 20191059-CA
Filed February 3, 2022

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 100906073

Gregory N. Skabelund, Attorney for Appellant

Joseph Pia, Attorney for Appellees

JUDGE RYAN D. TENNEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

TENNEY, Judge:

¶1 This case began with several hundred thousand dollars in allegedly unpaid loans, and it has since spawned over a decade of litigation. As this litigation has proceeded, the district court has issued several rulings granting partial summary judgment to the plaintiffs regarding various portions of the case.

¶2 In this appeal, defendant Brian Hansen challenges the most recent summary judgment ruling. There, the court first granted the plaintiffs' request for summary judgment on a cause of action for breach of a guaranty. But in his opposition to that motion, Hansen had filed a sworn Declaration that created a genuine dispute of fact as to whether the plaintiffs were entitled

to relief on this cause of action. We accordingly reverse the district court's decision to grant summary judgment on it. In that same ruling, the district court also granted summary judgment in the plaintiffs' favor on several other causes of action. But this ruling was also improper—this time because the plaintiffs had not actually requested summary judgment on those causes of action in their motion.

¶3     For the reasons set forth below, we reverse the district court's decisions.

BACKGROUND[1]

*The Loans*

¶4     In 2009, Brian Hansen joined with James and Dwayne Horsley (the Horsleys) to finance a loan to Teresa Collo. To assist with their own financing efforts, the Horsleys engaged three investment groups: Hansen & Mecham Investments LLC; MA Squared LLC; and Patrick Henry & Associates LLC (collectively, the Investors). The Horsleys received $300,000 from the Investors in exchange for three promissory notes, one for each Investor (the Investor Notes). Each Investor Note promised repayment of Investor funds by October 20, 2009, and each also contained an assignment clause in which the Horsleys "agree[d] to assign all Rights pertaining to [the Investors'] portion of said monies, as per agreements with Brian Hansen and Teresa [Collo]" to the Investors. The Horsleys then used the Investors' money and $100,000 of their own money to loan $400,000 to Collo.

---

1. Because this comes to us on appeal from a decision granting summary judgment, we recite the facts "in the light most favorable to the nonmoving party," which in this case is Hansen. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (quotation simplified).

¶5     Hansen was not a party to the loan agreement between the Horsleys and Collo, but he did provide the Horsleys with a conditional guaranty agreement (the Conditional Guaranty). Under the Conditional Guaranty, Hansen promised that if Collo did "not repay the principal amount of $400,000 to the Horsleys on or before October 12, 2009," Hansen would "pay said amount to the Horsleys in full." The Conditional Guaranty, however, contained a clause—commonly referred to in the litigation below and here as "the Condition Precedent"—under which the Conditional Guaranty would only take effect if Hansen "close[d] his pending financing transaction with i-Finance (or similar financial institution) for approximately $100 million."

¶6     The repayment deadlines came and went, and the Horsleys were never paid by either Collo or Hansen. As a result, neither were the Investors.

*The Complaint*

¶7     Relying on the assignment clauses in the Investor Notes, the Investors filed suit in 2010 against the Horsleys, Collo, and Hansen. Their complaint pleaded seven causes of action, and it specified which cause of action was being pleaded against which defendant or group of defendants.

¶8     The first cause of action was for breach of contract. It only named the Horsleys as defendants.

¶9     As for Hansen, the Investors asserted in their "General Allegations" section that Hansen "failed to pay the Horsley Defendants the $400,000 under the Collo/Horsley Note pursuant to [Hansen's] Guaranty." But the Investors only named Hansen as a defendant in the fourth, fifth, and seventh causes of action, which were for fraudulent and negligent misrepresentation, promissory estoppel and detrimental reliance, and breach of the covenant of good faith and fair dealing, respectively.

¶10    In his answer, Hansen denied that he had "any obligation to repay any amount to" the Investors or that they were entitled to any benefits from his Conditional Guaranty with the Horsleys. Hansen also defended himself against the three causes of action that had been pleaded against him.

¶11    Several years of litigation ensued, during which the Investors filed several motions for summary judgment against the Horsleys, Collo, and Hansen. Four of these motions are relevant to this appeal, and we discuss each in turn below.

*The 2010 Motion*

¶12    In August 2010, the Investors filed a motion for summary judgment against the Horsleys. This motion alleged that the Horsleys had "defaulted on several promissory notes/loans with the [Investors]," that "[t]he remaining principal amount ow[ed] under these notes [was] $300,000," and that "the notes allow[ed] recovery of additional costs and fees."

¶13    The Horsleys did not respond, and the court later granted summary judgment in the Investors' favor. In its decision, the district court awarded the Investors "$300,000 . . . together with any interest, costs, and attorneys' fees."

*The 2011 Motion*

¶14    In January 2011, the Investors filed a motion for summary judgment against both Collo and Hansen.

¶15    With respect to Hansen, this motion did not ask for summary judgment on any of the three causes of action that the Investors had pleaded against him in their complaint. Instead, the 2011 Motion asked the court to grant "partial summary judgment against" Hansen "for the following additional claim[] asserted in their Complaint: . . . breach of guaranty against Defendant Brian Hansen." The Investors argued that Hansen "personally guaranteed" payment on the "Collo/Horsley Note"

through the Conditional Guaranty and that he had breached that obligation by "fail[ing] to pay the Horsleys."

¶16    In a written decision issued in May 2011, the district court noted that the 2011 Motion was requesting judgment against Hansen for "breach of guaranty," and it specifically "denied" that motion "[a]gainst Brian Hansen."

*The 2019 Motion*

¶17    In 2011, the Investors entered into a stipulated agreement with the Horsleys that settled the Investors' claims against them for almost $350,000. Collecting on this judgment proved difficult, however, and after years of additional litigation that ultimately included bankruptcy proceedings, the Investors were still left unpaid.

¶18    In 2018, the Investors turned their focus back to Hansen, attempting to collect on the judgment against the Horsleys from Hansen through the Conditional Guaranty.

¶19    As the Investors pursued Hansen in court for this debt, Hansen failed to timely respond to almost every filing the Investors made with the district court. Hansen also impeded their efforts to schedule his deposition—so much so that the district court eventually authorized $7,500 in sanctions against him. Hansen's deposition was finally held in February 2019.

¶20    In March 2019, the Investors filed a motion for summary judgment against Hansen. There, the Investors asked for summary judgment on the three causes of action that they had pleaded against him—which, again, were for fraudulent and negligent misrepresentation, promissory estoppel and detrimental reliance, and breach of the covenant of good faith and fair dealing. The Investors supported this motion, in part, with eight pages of Hansen's deposition that they attached as an exhibit. These are the only pages of Hansen's deposition that are currently in the record.

¶21   After briefing and arguments, the court denied this motion.

*The Resubmitted 2011 Motion*

¶22   At the hearing on the 2019 Motion, the court asked Investors' counsel "why it's taken . . . nine years to try to seek judgment against [Hansen]." During the ensuing discussion, the Investors' counsel mentioned the 2011 Motion and told the court that it "actually ha[d] not been ruled on" and was "still pending."

¶23   This assertion was incorrect. As noted, the court in 2011 had specifically "denied" that motion, ruling that the Investors were not entitled to summary judgment on a "breach of guaranty" claim "[a]gainst Brian Hansen." But when counsel made this assertion during the 2019 hearing, neither the parties nor the court seemed aware of the earlier ruling. Indeed, when the court searched its database and found no indication that the 2011 Motion was pending, it assumed that this was a "question on [the court's] side of the equation." The court "apologize[d]" and suggested that the motion must have "slipped through the cracks and didn't get dealt with."[2]

¶24   The court accordingly instructed the Investors to resubmit the 2011 Motion. It also informed the parties that they could then file supplemental memoranda.

¶25   The Investors later resubmitted the 2011 Motion (the Resubmitted 2011 Motion). As noted, the original motion had sought summary judgment on a cause of action for "breach of

---

2. The judge who presided over the case in 2011 was not the same judge who was presiding over the case in 2019. We also note that when the earlier judge denied the 2011 Motion, that ruling was docketed as a minute entry, rather than as a judgment or memorandum decision.

guaranty against Defendant Brian Hansen." In their supplemental memorandum in support of the Resubmitted 2011 Motion, the Investors alleged a series of facts relating to the Conditional Guaranty. "Based on these additional facts and the facts and argument presented in Plaintiffs' 2011 Motion," the Investors "request[ed] that the Court grant their 2011 Motion and enter judgment" against Hansen.

¶26   Hansen later filed an opposition memorandum, accompanied by a sworn Declaration. In his Declaration, Hansen averred that "[t]he i-Finance loan was never approved." In his memorandum, Hansen thus argued that he had no obligation to assume the Horsleys' debt because the Conditional Guaranty had never been "activated."[3]

¶27   Hansen's opposition memorandum and accompanying Declaration were late, and the Investors moved to strike it as a result. But the court denied that motion and instead accepted both Hansen's opposition and Declaration as filed.

¶28   The district court later issued a written decision granting the Investors' Resubmitted 2011 Motion. Relying on *Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983), the court generally concluded that Hansen's Declaration was at odds with his

---

3. Hansen made similar representations and arguments in his answer to the Investors' initial complaint, a memorandum he filed in 2019, and two other declarations that he filed during the course of the proceedings. In those filings, Hansen likewise "denie[d] that he ha[d] any obligation to repay any amount to the [Investors] or that they [were] entitled to any benefi[ts] of his Conditional Guarant[y] Agreement . . . with the Horsleys," because his "obligation . . . was triggered by [his] closing on a $100 million dollar loan from i-Finance," and yet, according to Hansen, "i-Finance never closed on [the] loan application." We further note that neither party has alleged that Hansen ever closed a deal with a different "similar financial institution."

deposition and therefore did not create a genuine dispute of material fact. The court did not, however, identify which passage from Hansen's deposition was actually at odds with which passage from the Declaration.

¶29 The court thus granted the Investors' request for summary judgment. And in doing so, it stated that the Investors' motion "for Partial Summary Judgment on Causes of Action IV, V, and VII" was "well taken."

¶30 Hansen now appeals this decision.

STANDARD OF REVIEW

¶31 "Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Smith v. Kirkland*, 2017 UT App 16, ¶ 16, 392 P.3d 847 (quotation simplified). On appeal, we review the district court's decision to grant the Investors' summary judgment motion for correctness. *See Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

ANALYSIS

¶32 The Investors' Resubmitted 2011 Motion requested summary judgment on a cause of action for "breach of guaranty," and the district court granted that request. In its ruling, the court also granted summary judgment in the Investors' favor on causes of action for fraudulent and negligent misrepresentation, promissory estoppel and detrimental reliance, and breach of the covenant of good faith and fair dealing.

¶33 The district court erred on both fronts. First, the court erred when it granted summary judgment on a cause of action

for "breach of guaranty," because a genuine dispute of fact exists about whether the Conditional Guaranty was ever legally activated. And second, the court also erred when it granted summary judgment on the remaining causes of action, because the Investors had not asked for summary judgment on them in the Resubmitted 2011 Motion.

## I. Breach of Guaranty

¶34 Hansen argues that the court should not have granted the Investors' request for summary judgment on a breach of guaranty cause of action. In Hansen's view, his Declaration created a genuine dispute of material fact about whether the Condition Precedent was met and, therefore, whether the Conditional Guaranty was legally activated. We agree.

¶35 As discussed, the Conditional Guaranty contained a clause—the Condition Precedent—under which Hansen was only obligated to repay the debt in question if he "clos[ed] his pending financing transaction with i-Finance (or similar financial institution) for approximately $100 million." In his sworn Declaration, however, Hansen specifically averred that the "i-Finance loan was never approved." Hansen made a similar assertion in two other declarations that he filed in the case, and this was also the basis for his initial answer to the complaint itself.

¶36 The Investors are therefore incorrect when they assert that "[i]t is undisputed that the Condition Precedent to the Guaranty [was] satisfied." This is very much disputed, because Hansen's sworn Declaration specifically says that the Condition Precedent was not satisfied.

¶37 Unless there is some basis for disregarding Hansen's Declaration, this should end the matter as far as summary judgment is concerned. After all, "summary judgment is improper when the facts are controverted." *Schaer v. State ex rel. Utah Dep't of Transp.*, 657 P.2d 1337, 1341 (Utah 1983); *see* Utah R.

Civ. P. 56(a). And when reviewing a grant of summary judgment, it is axiomatic that courts must view the facts and reasonable inferences "in the light most favorable to the nonmoving party"—which in this case is Hansen. *See Drew v. Pacific Life Ins. Co.*, 2021 UT 55, ¶ 35, 496 P.3d 201.

¶38 The Investors nevertheless claim that Hansen's Declaration "directly contradicts his deposition testimony." Like the district court, the Investors rely on *Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983), wherein our supreme court held that "when a party takes a clear position in a deposition[] that is not modified on cross-examination," the party "may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." From this, the Investors ask us to hold that the Declaration could not defeat their request for summary judgment.

¶39 But by its own terms, *Webster* requires a demonstration that (i) the deponent took a "clear position" in his deposition and (ii) did indeed "contradict[]" that position in a subsequent affidavit. *Id.* And the Investors have not given us any basis for concluding that this happened here. As noted, the only portion of Hansen's deposition that was submitted to the district court below was an eight-page excerpt that the Investors attached to their 2019 Motion. The district court decided summary judgment "on the basis of a cold paper record," *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56, so we're limited to those eight pages too.

¶40 We have reviewed those eight pages, and there's no place in them in which Hansen ever says that the i-Finance deal ever closed. In fact, the i-Finance transaction is never discussed in those pages at all. Thus, on the record before us, there is no basis for applying *Webster* or for disregarding Hansen's sworn Declaration.

¶41 Undeterred, the Investors seek to avoid this outcome on three additional fronts. But none are availing.

¶42 First, the Investors attempt to cure the record deficiency by including Hansen's full deposition as an addendum to their brief. But Hansen objected to the inclusion of that addendum, and we sustained that objection. For good reason—namely, it is settled that an appellate court "will not consider evidence which is not part of the record." *State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279. We must therefore disregard this "extraneous evidence" that the Investors have included for the first time in their appellate addendum. *Id.*; *cf. Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 2 n.1, 21 P.3d 219 (granting a motion to strike portions of a brief that "referred to deposition testimony not made part of the record on appeal"); *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 455–56 (Utah Ct. App. 1989) (denying a motion to supplement the record with a deposition because "[t]he trial court did not have [the] deposition before it when it granted . . . summary judgment" and "[e]vidence not available to the trial judge cannot be added to the record on appeal").[4]

¶43 Second, the Investors invoke a related rule under which a "person cannot avoid being deposed and avoid answering questions by claiming no knowledge, only to subsequently file a self-serving affidavit in order to avoid summary judgment." *Anderton v. Boren*, 2017 UT App 232, ¶ 20, 414 P.3d 508 (quotation simplified). The Investors claim that Hansen was generally unprepared for his deposition and that he "avoided answering questions regarding the i-Finance transaction." From this, they argue that his Declaration cannot defeat their request for summary judgment.

¶44 But again, we only have eight pages of Hansen's deposition to work with, and there's no mention of the i-Finance transaction anywhere within them. So while those pages do

---

4. In any event, although the Investors have (improperly) provided us with the full deposition, they still point to no place in that full deposition in which Hansen ever said that he ever closed on the i-Finance transaction.

illustrate Hansen's lack of preparation and enthusiasm for the deposition, we see nothing in those pages in which Hansen claimed that he had "no knowledge" of whether he had closed on the i-Finance transaction. *See id.* And again, in other filings in the case, Hansen repeatedly and affirmatively maintained that he never closed on that transaction.

¶45    Finally, in the portion of their brief discussing the alleged contradictions, the Investors include a citation to a 384-page passage from the record—a passage that spans multiple documents and filings. If, by this citation, the Investors mean to argue that Hansen contradicted himself on this point somewhere within those pages, their presentation of this argument to us is insufficient. An "appellate court is not a depository in which a party may dump the burden of argument and research." *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (quotation simplified). We decline the Investors' apparent invitation to comb through those 384 pages ourselves to determine whether Hansen said anything in any of those documents that contradicted his Declaration about whether he closed on the i-Finance transaction.

¶46    In short, the breach of guaranty cause of action against Hansen turns on the Conditional Guaranty being activated, and the Conditional Guaranty is activated only if the Condition Precedent is satisfied. But the Condition Precedent required proof that Hansen closed on a financing transaction with i-Finance or a "similar financial institution" for "approximately $100 million," and we don't have any such proof.

¶47    Instead, what we have is this: Hansen swore in his Declaration that he did not close on such a deal, and the Investors have pointed to no place in the existing record where Hansen ever contradicted himself on that key point. Because that Declaration was accepted as filed by the district court, there is a genuine dispute of material fact about whether the Conditional Guaranty was ever legally activated and, hence, whether Hansen's contractual obligation to repay the Investors was ever activated too. The district court therefore erred when it granted

summary judgment on the breach of guaranty claim against Hansen. We reverse that decision.[5]

## II. Remaining Claims

¶48 The district court also determined that the Investors' "[Resubmitted 2011 Motion] for Partial Summary Judgment on Causes of Action IV, V, and VII" was "well taken." Those causes of action, again, were for fraudulent and negligent

---

5. Hansen also argues that the Investors have never properly pleaded a breach of guaranty cause of action against him. Having reviewed the record, we note that there is indeed a substantial question about this. There was no "breach of guaranty" cause of action pleaded against Hansen in the complaint, and the "breach of contract" cause of action that was pleaded specifically identified the Horsleys—and only the Horsleys—as the defendants on that cause of action. Moreover, the Investors never moved to amend the complaint to add a breach of guaranty (or breach of contract) cause of action against Hansen.

The Investors nevertheless respond that Hansen was put on notice that such a cause of action was pending against him through the general assertions in the complaint regarding the Conditional Guaranty. But the Investors' counsel informed the district court during the hearing on the Investors' Resubmitted 2011 Motion that those assertions related to the three causes of action that were pleaded against Hansen, rather than a cause of action for breach of contract.

Hansen did not oppose the Resubmitted 2011 Motion on this basis, however, and the sole basis for the district court's ruling on it was its conclusion that Hansen's Declaration did not create a genuine dispute of material fact. Because we reverse the court's ruling on its own terms, we need not also determine whether Hansen is correct when he now argues that the Investors have not properly pleaded a breach of guaranty claim against him.

misrepresentation, promissory estoppel and detrimental reliance, and breach of the covenant of good faith and fair dealing.

¶49    But the Investors had already sought summary judgment on those causes of action in the 2019 Motion. And when they did, the district court denied that motion. The Investors never challenged that denial in any motion for reconsideration or interlocutory appeal, nor did they ask the court to reconsider those causes of action in the Resubmitted 2011 Motion.

¶50    Instead, the only cause of action at issue in the Resubmitted 2011 Motion was a "breach of guaranty" cause of action. Thus, in the ruling at issue, it appears that the district court sua sponte granted summary judgment on causes of action that were not before it.

¶51    This was improper. When a party moves for summary judgment, it must "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Utah R. Civ. P. 56(a). Because the Investors only requested summary judgment on a breach of guaranty cause of action, the court had no basis for granting summary judgment on any other causes of action. We accordingly reverse the court's decision to grant summary judgment on "Causes of Action IV, V, and VII."

CONCLUSION

¶52    The district court erred by granting summary judgment on a breach of guaranty cause of action because a genuine dispute of material fact exists regarding Hansen's obligations under the Conditional Guaranty. The court also erred by granting summary judgment on other causes of action that were not before it under the summary judgment motion at issue. We therefore reverse both decisions.

―――――――